IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VANITY BENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-00121 |
| | § | |
| TYSON FOODS INC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND AMENDED MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendant Tyson Foods, Inc.'s ("Defendant" or "Tyson") Motion for Summary Judgment (Dkt. 41) and Amended Motion for Summary Judgment (Dkt. 50). Plaintiff Vanity Benson ("Plaintiff" or "Benson") has filed responses in opposition (*see* Dkts. 43 and 53), to which Defendant has filed replies (*see* Dkts. 46 and 66), and Plaintiff has filed a surreply to the amended motion (Dkt. 58). As set forth below, both motions (Dkts. 41 and 50) are DENIED.

**FACTUAL BACKGROUND**

This suit involves a workplace injury. Plaintiff alleges that she was injured on or about October 4, 2012 while operating a forklift as an employee of Tyson. *See* Dkt. 11 at ¶ 7. According to Plaintiff, she was injured when the forklift "tilted in a precarious manner" and "then slammed back down, causing [her] to fall partly out of the forklift." *Id.* at ¶¶ 14-18. Subsequently, the forklift crashed into a wall, pinning Plaintiff's foot, breaking several bones, and requiring multiple surgeries, including the placement of screws in her foot. *Id.*

1

Plaintiff filed her Original Petition and Jury Demand in the present lawsuit on December 23, 2013, in the 59th Judicial District Court of Grayson County, Texas. Tyson filed its Notice of Removal in this Court on February 26, 2014. On August 15, 2014, Benson filed her Second Amended Complaint ("SAC"), the live complaint in this action, asserting causes of action against Tyson for premises liability, negligence, and violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *Id*. at ¶¶ 60-62; 66-72. Plaintiff's ADA claim also asserts that Tyson created a hostile work environment. However, in her response to Defendant's summary judgment motion (*see* Dkt. 53 at 19), Plaintiff has voluntarily relinquished her hostile work environment claim. That claim, therefore, is dismissed with prejudice. Plaintiff's claims against the forklift manufacturer, Crown Equipment Corporation ("Crown"), for defective design, failure to ward, and negligence were dismissed with prejudice on December 8, 2015 (*see* Dkt 49).

Tyson has exercised its right to become a non-subscriber under the Texas Workers' Compensation Act, and has instead offered its employees the opportunity to participate in Tyson's Workplace Injury Settlement Program ("WISP"). Tyson WISP is an employee welfare benefit program that provides specific, designated payments for work-related illnesses and personal injuries sustained by Tyson employees in the course and scope of their employment. Pursuant to the terms of WISP, an employee automatically receives Basic Benefits and may elect to become a Participant in the program in order to receive Comprehensive Benefits if the employee sustains an injury in the course and scope of employment with Tyson. Election to participate in WISP requires a written acceptance to all the terms of that program. By agreeing to the WISP Acceptance and Waiver, however, an employee settles and releases any and all personal injury claims with Tyson and waives any cause of action at common law or under any

statute to recover damages for personal injuries, occupational disease, or death sustained in the course and scope of employment, including but not limited to claims based on negligent and grossly negligent acts or omissions ("Acceptance and Waiver"). After her alleged injury, Benson signed the WISP Acceptance and Waiver on October 4, 2012 and received benefits as a participant in the WISP program.

Tyson seeks summary judgment on two grounds: (i) that by accepting WISP benefits and executing the WISP Acceptance and Waiver, Benson waived her right to assert her premises liability and negligence causes of action; and (ii) that Benson cannot make a *prima facie* case of discrimination pursuant to the Americans with Disabilities Act ("ADA") because she does not meet the definition of disability and because she was terminated for a nondiscriminatory reason. Benson responds that a fact issue exists concerning the enforceability of the waiver because she was misled by Tyson into signing the WISP waiver and she did not understand its effect. Benson also contends that a fact issue exists as to whether Tyson terminated her employment due to her disability, in violation of the ADA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require Submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d

984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. Tex. Local R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

**EVIDENCE PRESENTED**

In support of its motion, Defendant offers the following summary judgment evidence:

1) Exhibit A, Affidavit of Tiffany Skaggs, RN, dated October 20, 2015;
    a) Exhibit A-1, a copy of the Tyson Foods, Inc. Workplace Injury Settlement Program – Texas;

b) Exhibit A-2, a copy of Employee's Initial Report of Injury/Illness;

   c) Exhibit A-3, a copy of the executed Tyson Foods, Inc. Workplace Injury Settlement Program – Texas Acceptance and Waiver, signed by Benson on October 30;

   d) Exhibit A-4, a copy of "Payment Listing" of WISP Benefits paid to or on Benson's behalf;

2) Exhibit B, Affidavit of John Kyker, dated October 20, 2015;

   a) Exhibit B-1, a copy of the Tyson Foods, Inc. Notice to New Tyson Texas Employees;

3) Exhibit C, cited excerpts from the Oral Deposition of Vanity Benson, dated March 25, 2015;

4) Exhibit D, *Maria Castillo v. Tyson Foods, Inc., et al.*, No. CIV.A. H-14-2354, 2015 WL 6039236, at *1 (S.D. Tex. Oct. 15, 2015), reconsideration denied;

5) Exhibit E, *Walkup v. Tyson Foods, Inc.*, No. 7:13-CV-0150-O, 2014 WL 4798443, at *1 (N.D. Tex. Sept. 26, 2014);

6) Exhibit F, *Woods v. Tyson Refrigerated Processed Meats, Inc.*, Civil Action No. 7:08-cv-00207-KA (N.D. of Tex. April 6, 2010);

7) Exhibit G, "Order," *Walden v. Tyson Foods, Inc.*, Civil Action No. 5:10-CV-00497-OG (W.D. Tex. May 23, 2011;

8) Exhibit H, *Walden v. Tyson Foods, Inc.*, 471 F. App'x 351 (5th Cir. June 15, 2012);

9) Exhibit I, cited excerpts from the Oral Deposition of John Kyker, dated November 6, 2013;

10) Exhibit J, cited excerpts from the Oral Deposition of Thomas Lang, dated March 26, 2015;

11) Exhibit K, Affidavit of John Kyker, dated January 29, 2016;

   a) Exhibit K-1, a copy of Sherman Case Ready Attendance Policy;

   b) Exhibit K-2, a copy of Tyson Foods, Inc. Team Member Orientation/Training;

   c) Exhibit K-3, a copy of New Team Member/Supervisor Checklist;

   d) Exhibit K-4, a copy of Calendar Card Reporting Disciplinary Action;

   e) Exhibit K-5, a copy of Harassment/Discrimination Policy and Notification Roster;

  f) Exhibit K-6, a copy of Temporary Transitional Duty Assignment Agreement;

  g) Exhibit K-7, a copy of Job Activity Notifications;

  h) Exhibit K-8, a copy of correspondence to Vanity Benson dated June 27, 2013; and

  i) Exhibit K-9, a copy of Hourly Termination Form.

Dkt. No. 50-1-50-12.

In response, Plaintiff submits the following summary judgment evidence:

1) Exhibit A - 2015-11-04, Benson Declaration;

2) Exhibit B - 2016-02-11, Benson Declaration;

3) Exhibit C - Benson deposition excerpts;

4) Exhibit D - Doctor's note;

5) Exhibit E - Attendance and Termination;

6) Exhibit F - Leave of Absence forms;

7) Exhibit G - Light-Duty Assignment;

8) Exhibit H - Progress Notes;

9) Exhibit I - Medical-related Records;

10) Exhibit J - Skaggs deposition excerpts;

11) Exhibit K - Kyker deposition excerpts;

12) Exhibit L - Lang deposition excerpts;

13) Exhibit M - Lovelace deposition excerpts; and

14) Exhibit N - Reese deposition excerpts.

Dkt. 53-1-53-15.

## ANALYSIS

### I. Tyson's WISP Acceptance and Waiver

Tyson contends that Benson is barred from recovery on her premises liability and negligence causes of action as a matter of law because she knowingly signed the WISP Acceptance and Waiver and accepted benefits under the program. Tyson's argument rests almost exclusively on the Texas common law principle that "one who signs a contract is legally held to have known what words were used in the contract, to have understood their meaning, and to have comprehended the legal effect of the contract," *In re Border Steel, Inc.*, 229 S.W.3d 825, 829 (Tex. App. 2007), and "absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms," *In re McKinney*, 167 S.W.3d 833, 834 (Tex. 2005). *See* Dkt. 50 at 13. Benson argues that the common law contractual presumption may be overcome by evidence of trick or artifice and that a fact issues exists as to whether Tyson used artifice or trickery to get her to sign the waiver. She contends that Tyson pressured her into signing the waiver when she was in pain and under medication and without giving her an opportunity to read and understand it. *See* Dkt. 53 at 9.

Tyson made a similar argument in *Blackshire v. Tyson Foods, Inc.*, 2010 WL 3257371, at *8 (E.D. Tex. 2010). In *Blackshire*, the court denied summary judgment because a fact issue existed as to whether the employee voluntarily entered into the waiver with knowledge of its effect. The Court found that the express language of Tex. Labor Code § 406.033(f)(1) requires that, for a waiver of a cause of action against a non-subscribing employee to be valid, the employee must "voluntarily enter[ ] into the waiver with knowledge of the waiver's effect." *Id.* at *4. At the time of the *Blackshire* holding, no Texas court had addressed the scope of the

7

statutory language. *Id*. As Tyson correctly argues, more recent case law specifically addresses the "knowledge of its effect" requirement in Tex. Labor Code § 406.033(f)(1). *See Lopez v. Garbage Man, Inc.*, 2011 WL 1259523, at *8 (Tex. App.–Tyler 2011, no pet.) (released for publication); *Gunn v. Baptist/St. Anthony's Health Network*, 405 S.W.3d 239, 242 (Tex. App.– Amarillo 2013). However, Tyson's argument fails to address the distinguishing characteristics in those cases.

In *Lopez*, the court held that one who signs a contract is "presumed as a matter of law to have read and understood the contract *unless he was prevented from doing so by trick or artifice*." *Lopez*, 2011 WL 1259523, at *8 (emphasis added). Applying the analysis in *Lopez*, the court in *Gunn* found that there was no evidence that the employee did not have knowledge of the waiver's effect when she signed it. Notably, however, the court in *Gunn* found *Blackshire* distinguishable in that "[t]he record in *Blackshire* included evidence not present here, including evidence the employee did not have the opportunity to read the document in its entirety before signing it, evidence he told the employer he did not understand the waiver, and evidence raising questions concerning the voluntariness of his signing." *Gunn*, 405 S.W.3d at 244.

Tyson also cites a number of post-*Blackshire* cases upholding the validity of the waiver of a plaintiff's right to sue pursuant to Tyson's WISP. However, the Court finds these cases to be distinguishable for similar reasons as those explained above. For example, in *Castillo v. Tyson Foods, Inc.*, 2015 WL 6039236, at *1 (S.D. Tex. 2015), the court found that the waiver was knowing and voluntary because a Tyson nurse explained the waiver to the employee and gave her an opportunity to ask questions about the waiver. The court also rejected Castillo's argument that the contract was unconscionable. In *Walkup v. Tyson Foods, Inc.*, 2014 WL 4798443, at *1 (N.D. Tex. 2014), summary judgment was granted in favor of Tyson because the

evidence showed that the employee understood the waiver's contents and consequences when he signed it and there was no evidence or artifice or trickery.

Tyson claims that after the injury, Tyson pressured her to sign the WISP waiver. *See* Dkt. 53 at 9. According to Benson's affidavit, Tyson tried to have her sign papers while she was still in the hospital, but her mother instructed the Tyson representative not to bother her daughter in the hospital. *See* Dkt. 53-1. Benson testified that after she was released from the hospital Tyson demanded that she come to the plant and sign papers. *See* Dkt. 53-3 at 5. The papers were brought to her car in the parking lot by Larry Reese, a Tyson nurse. *Id*. Benson testified that Reese told her the paperwork was necessary for Tyson to continue to pay her medical expenses but did not explain that she was signing a waiver. *See id*; *see also* Dkt. 53-1. She also testified that when Reese showed her any papers, he would "show her a doctor's paper first, and then he would flip to [other] papers and tell her to sign [it]." *See* Dkt. 53-3 at 5. Benson claims that if it had been explained to her that she was signing a waiver, she would not have signed it. *Id*. Benson also testified that when she signed the waiver she was in severe pain and on pain medication. *Id*. at 15-16. In sum, Benson claims that when she signed the WISP waiver, she did not understand that she was waiving her rights. *See* Dkt. 53-1 at 1.

Based on the foregoing, the Court finds that a fact issue exists as to whether Benson knowingly signed the waiver and whether she knowingly relinquished her right to sue Tyson by signing it. A reasonable jury might find that Benson "was prevented from doing so by trick or artifice." *Lopez*, 2011 WL 1259523, at *8.

## II. ADA Violation Claim

Benson alleges that Tyson terminated her because of her injury while she was on medical leave. According to Benson, at the time of her termination, she had been ordered not to return to

work until released by her orthopedist. Tyson responds that Benson was terminated for violation of Tyson's attendance policy and job abandonment.

*The ADA and the ADAAA*

Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–13, prohibits discrimination against an employee on the basis of physical or mental disability, requires an employer to make reasonable accommodations necessary to allow an employee with a disability to perform the essential functions of her job unless the accommodation would impose an undue hardship on the employer. Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." In addition, Section 12112(b)(5) states that the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity." A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). A disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L.Ed.2d 450 (1999) and *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L.Ed.2d 615 (2002), both of which were overturned by the ADAAA. *Sutton*, holding that an

employee is not disabled if his impairment is corrected by a mitigating measure to the point where it does not substantially limit a major life activity (e.g., by insulin given to a diabetic), required a court to take into account the ameliorative effects of mitigating measures in determining whether there was a disability, while *Toyota* narrowly construed and strictly interpreted the term "disability." *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 534 (S.D. Tex. 2011).

The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"). *See Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 244 (5th Cir. 2013). In crafting the ADAAA, Congress intended "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Neely*, 735 F.3d 242, 244 (citing Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 1201 (Note)). To that end, the ADAAA primarily focuses on broadening the definition of "disability" by singling out and superseding *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). *Neely*, 735 F.3d 242, 244 (citing Pub.L. No. 110–325, § 2(a)(4)-(6), (2)(b)(2)-(5) (listing congressional findings and purposes regarding the rejection of the rulings in these cases)). Because those two decisions interpreted congressional intent to narrow the scope of the words "substantially limits" and "major" and the "regarded as" prong in the ADA's definition of disability, Congress added 42 U.S.C. § 12102(2)-(4) to correct that perceived misinterpretation. *Neely*, 735 F.3d 242, 244.

*McDonnell Douglas Burden-Shifting Scheme*

In a discriminatory termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (internal citations omitted). Under the modified *McDonnell Douglas* approach, a plaintiff must demonstrate a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

This analysis first requires the plaintiff to establish a *prima facie* case of discrimination. *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694. If the plaintiff succeeds in establishing her *prima facie* case, then the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *See id*. Finally, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. *See id*. In the summary judgment context, a case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *Id*. (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).

To make her *prima facie* case, Benson must establish that (1) she is disabled within the meaning of the ADA, (2) she is qualified and able to perform the essential functions of her job, and (3) she was fired because of her disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999). Because the second element is not contested, the Court's summary judgment analysis of Benson's ADA discrimination claim focuses on whether she was disabled within the meaning of the ADA and whether she was fired because of her disability.

*Disabled Within the Meaning of the ADA*

To prevail on her ADA claim, Benson must establish that (1) she is disabled within the meaning of the ADA, (2) she is qualified and able to perform the essential functions of her job, and (3) she was fired because of her disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999). Tyson argues that Benson has failed to make her *prima facie* case because she does not meet one of the ADA's definitions of disabled: (1) there is no evidence that she had an impairment that substantially limited one or more of her major life activities; (2) she did not establish a record of an impairment that substantially limits one or more of her major life activities; and (3) she was not regarded as having an impairment. *See* Dkt. 50 at 19-20 (citing 42 U.S.C. § 12102(1)). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). Benson responds that she meets all three definitions. *See* Dkt. 53 at 14-15.

The summary judgment evidence shows that Benson was injured at work on October 4, 2012 and taken to the hospital, that she had her first surgery on or about October 5, 2012, and that she was on a medical leave of absence until approximately December 14, 2012. *See* Dkt. 53-3 at 6; Dkt. 53-6 at 1; Dkt. 53-8 at 3; Dkt. 53-9 at 1, 4; Dkt. 53-10. When she was released to return to work, she was restricted to sedentary or light duty work only and was assigned to the "frock room." *See* Dkt. 53-3 at 6-7; *see also* Dkt. 53-9 at 7. The medical records indicate that her restrictions included, among other things, no bending, twisting, squatting, or kneeling and restricted walking and standing. *See, e.g.*, Dkt. 53-9. According to Benson's deposition testimony, it was difficult for her to comply with some of the restrictions placed upon her by her

doctor. *See* Dkt. 53-3 at 7. Benson avers that Tyson made it difficult for her to comply with these restrictions because while working in the frock room she was not able to keep her foot properly elevated and iced and was not permitted to take pain medication because it made her drowsy. *See id*; Dkt. 53-8 at 3. She was scheduled for another surgery in January 2013 (*see id*.) and was again placed on work restrictions through February 25, 2013 (*see* Dkt. 53-6 at 2).

Tyson's own "Progress Notes" demonstrate that Benson continued to experience foot pain and other problems and was placed on various work restrictions such as "light duty," "restricted/modified work" and "minimal walking." *See* Dkt. 53-8 at 1-6. These problems eventually culminated in her visit to the emergency room on June 24, 2013, during which she received a doctor's note instructing her not to return to work until "released by her orthopedist." *See* Dkt. 53-8 at 1. It was during this period of time off work that Benson was deemed by Tyson to have abandoned her job. *See* Dkt. 53-5 at 1-3. Although Benson had a third surgery on July 18, 2012, she was terminated on July 1, 2013. *See* 53-5 at 1-3; 53-8 at 1. According to Benson, she did not learn of her termination until after the surgery. *See* Dkt. 53-3 at 9.

Based on the foregoing, a fact issue exists as to whether Benson had an impairment that substantially limited one of her major life activities. *See* 42 U.S.C. § 12102(2)(A). From the date of her injury in October 2012 and at least until her termination in July 2013, Benson was either unable to work or could only perform sedentary work. She was instructed to elevate and ice her foot as much as possible and was prescribed medication for pain and was restricted to minimal walking and standing. The Court finds unpersuasive Tyson's argument that because there is no evidence of permanent or expected long-term impact Benson was not disabled (*see* Dkt. 56 at 6-7). Tyson contends that "courts have applied [this factor] well after the ADAAA and cites as support *Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475 (N.D. Tex. 2015),

appeal dismissed (Feb. 26, 2016). *Willis*, however, is clearly distinguishable because in that case the plaintiff's condition was a one-time occurrence that lasted only a few hours. *See id*. The Court thus concludes that the question of whether Benson meets the ADA's first definition of disability, that she had an impairment that substantially limits one or more of the major life activities, is best decided by the trier of fact.

The summary judgment evidence also shows that Benson had a record of a disability as required by the second definition. As discussed above, Tyson's own detailed medical records regarding Benson's medical treatment, condition, and work restrictions defeats its argument that there was no record of Benson's disability. Furthermore, Tyson's argument that because Benson designated no experts in this lawsuit there is no record of a disability (*see* Dkts. 50 at 20; 56 at 7) is completely lacking in legal authority or other support.

Finally – and perhaps most importantly – Tyson's argument that Benson does not meet the ADA's third definition, regarded as having a disability, is defeated by the enactment of the ADAAA. The ADAAA provides that an individual is "regarded as" having a disability if he "establishes that he ... has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added). In "regarded as" cases, therefore, a plaintiff need only show that his employer perceived him as having an impairment; he is not required to show that he is substantially limited in a major life activity, as is still required to meet the other two definitions of "disability." *See Mendoza v. City of Palacios*, 962 F. Supp. 2d 868, 871-72 (S.D. Tex. 2013); *see also Dube v. Tex. Health & Human Servs. Comm'n.*, 2012 WL 2397566, at *3 (W.D. Tex. 2012). A plaintiff is also not required to show "how or to what degree [his employer] believed the impairment affected him."

*Mendoza*, 962 F. Supp. 2d at 872 (citing *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012)). This explanation of how the ADAAA changed the "regarded as" definition defeats the Tyson's argument that Benson has not shown an impairment that substantially limits a major life activity. Under the ADAAA, she is not required to do so.

For these reasons, the Court finds that a fact issue exists concerning whether Benson meets one of the ADA's definitions of disability. Accordingly, summary judgment is not warranted on those grounds.

*Discriminatory Termination*

Tyson denies any violation of the ADA arguing that Benson cannot make a *prima facie* case of discrimination because she was terminated for a non-discriminatory reason. Tyson avers that Benson was terminated for job abandonment after accumulating a prohibited number of negative attendance points that culminated in her being absent for five (5) consecutive days of work. *See* Dkt. 50 at 2-3. According to Tyson's Attendance Policy, "[i]f a team member is absence [sic] without notice for 3 days in a row, it would be considered job abandonment and Tyson Foods will process the work separation as a voluntary resignation." *Id*. at 1. Benson was documented as having unexcused absences on June 24-28, 2013, a total of five (5) days. *See* Dkt. 53-5 at 2.

According to Benson, these absences resulted from her visit to the emergency room on June 24, 2013. *See* Dkt. 53-3 at 8. Benson testified that in late June she "woke up with an issue dealing with [her] foot" and was instructed by Tyson medical personnel to go to the hospital. *See* Dkt. 53-3 at 8. She was seen at Texoma Medical Center and given a doctor's note restricting her from working until released by her orthopedist. *See* Dkt. 53-3 at 8. Benson contends that she took the note to Tyson and "did everything [she] was required to do" in terms

of notifying Tyson that she had been instructed not to return to work until released by her orthopedist. *See id*.

John Kryker, Tyson's Complex Human Resources Manager, maintains that Benson was not on leave at the time of her termination because she never completed the required leave of absence paperwork. *See* Dkt. 53-11 at 2. However, on at least two occasions, Benson's leave of absence application appears to have been completed by Tyson personnel.[1] *See, e.g.*, Dkt. 53-6 at 1-2. In a letter dated June 27, 2013, Tyson advised Benson that she needed to report back to work immediately. *See* Dkt. 50-11. The letter references the fact that on June 18, 2013, Dr. Desai had released her to return to work with restrictions but does not reference her visit to Texoma Medical Center on June 24, 2013 or the doctor's note resulting from that visit.[2] *Id*. Although the record is not clear on this point, it appears to be Benson's claim that she never received the letter. *See* Dkt. 53-3 at 8. The record also indicates that Kryker called Benson at some point after her emergency visit on June 24, 2013 and before the June 27 letter. *See* Dkt. 50 at 21; Dkt. 53-2. Although Benson acknowledges receiving a voicemail from Kryker, she states that when she returned the call she spoke to another Human Resources representative. *See* Dkt. 53-2. Benson claims that this representative told her that she could lose her job because of her visit to a doctor not approved by Tyson, but did not discuss her disability or the absence policy. *Id*.

---

[1] The evidence indicates that there is some inconsistency in Tyson's policy and practice regarding the handling of what constitutes "proper notification" and "appropriate documentation" for absences of more than three (3) days. Although Kryker testified that an employee would need to complete a leave of absence application and discuss his or her options with someone in HR, he also testified that if an employee gave a doctor's note to a supervisor, the supervisor would refer the employee to Tyson's occupational health department. *See* Dkt. 53-11 at 2. Thomas Lang, a Tyson manager, testified that Tyson considers appropriate documentation to be "paperwork from a doctor, from an ER clinic or—doctors' paperwork stating that [the employee was] ill or sick." *See* Dkt. 53-12 at 3.

[2] Notably, the letter does not address the fact that Tyson considered Benson's absences to be unexcused or that her unexcused absences could be considered job abandonment. The letter states only that failure to return to work may result in suspension of WISP benefits and no contains no warning that Benson was in danger of being terminated.

The summary judgment record indicates that Tyson was heavily involved in managing Benson's medical treatment, her work status, and any work restrictions. *See* Dkt. 53-8; Dkt. 53-9. At least some of her medical appointments appear to have been coordinated by Tyson and she was instructed to notify Tyson Health Services if she was unable to keep an appointment. *See* Dkt. 53-9 at 5-6. As discussed above, Tyson personnel also completed leave of absence paperwork on Benson's behalf. Tyson medical personnel also accompanied Benson on some of her medical appointments. Tiffany Skaggs, RN, Tyson's Nurse Manager, testified that it was her practice with any Tyson injured employee to attend as many appointments as possible and that she recalled attending at least one appointment with Benson. *See* Dkt. 53-10 at 3. A copy of the "Work/School Release Form" from Texoma Medical Center indicates that Benson was seen at the facility on June 24, 2013 and that she could return to work "when released by orthopediest [sic]." *See* Dkt. 53-4 at 1. An entry in Tyson's Progress Note confirms that Tyson medical personnel were aware of both the visit and the restriction. *See* Dkt. 53-8 at 1. In fact, the Progress Note quotes Texoma Medical Center's "Work/School Release Form" verbatim and also emphasizes the restriction, "WHEN RELEASED BY ORTHOPEDIEST," by entering it in all upper case letters. *Id*.

The factual dispute surrounding the events that led to Benson's termination is sufficient to create a fact issue. The Court thus finds that Benson has established a *prima facie* case for her ADA violation claim and has also raised genuine issues of material fact that Tyson's articulated reasons for her termination were a pretext for discrimination based on her disability.[3]

---

[3] The Court finds no need to analyze the "reasonable accommodation" prong of Benson's *prima facie* case because the issue on summary judgment is not whether Tyson made reasonable accommodations when Benson was on light duty but, rather, whether it made reasonable accommodations in light of the June 24, 2013 doctor's note stating that she was not to return to work until released by her orthopedist.

## CONCLUSION

For these reasons Defendant's Motion for Summary Judgment (Dkt. 41) and Amended Motion for Summary Judgment (Dkt. 50) on Plaintiff's negligence and premises liability claims and on her ADA discriminatory termination claim are **DENIED**, and these claims shall proceed to trial. Tyson has failed to prove that there are no genuine issues of material fact for trial, as is its burden on summary judgment. *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991. As discussed above, because Plaintiff has abandoned her hostile work environment claim (*see* Dkt. 53), that claim is dismissed with prejudice.

**SO ORDERED**.

**SIGNED this 6th day of July, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE